IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| TIFFANY L. WRIGHT, | |
| Plaintiff, | Civil No. 12-6628 (RBK) |
| v. | **OPINION** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security | |
| Defendant. | |

**KUGLER**, United States District Judge:

This matter comes before the Court on the appeal filed by Plaintiff Tiffany L. Wright from the decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff disability insurance benefits ("DIB") pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g). For the reasons expressed below, the Court will vacate the Commissioner's decision that Plaintiff is not entitled to DIB and remand the matter to the Administrative Law Judge ("ALJ").

I.  **BACKGROUND**

   **A. Procedural History**

Plaintiff Tiffany L. Wright filed an application for DIB on January 8, 2010, alleging an onset of disability on January 1, 2010. Tr. 139. Her DIB claim is based on her diagnosis with complex regional pain syndrome ("CRPS") and fibromyalgia. Tr. 41, 180. She claims that she developed CRPS from injuries sustained in a car accident on June 30, 2007. Tr. 185, 491.

Plaintiff's claim was denied on April 21, 2010. Tr. 102-06. The initial denial indicated that her claim was denied because Plaintiff's condition did not keep her from working. It indicated that although her fibromyalgia did cause pain, it did not "limit [Plaintiff's] ability to move about and use [her] limbs." Tr. 102. Plaintiff then filed a request for reconsideration, which was denied on October 23, 2010. Tr. 107-12. The denial of reconsideration cited similar reasons as the original denial, indicating that Plaintiff had the ability to work as a secretary, which was a job she had performed in the past. Tr. 110. Plaintiff then filed a request for a hearing before an ALJ on November 15, 2010. Tr. 113-15. Represented by counsel, Plaintiff appeared and testified before the Honorable Frederick Timm, ALJ, on February 22, 2011. Tr. 24-27. On May 11, 2011, the ALJ found that Plaintiff was not disabled as defined in the Social Security Act at any time between her alleged disability onset date of January 1, 2010, and the date of the ALJ's decision. Id. The ALJ based his conclusion on different grounds than the original denial, finding that due to the amount of Plaintiff's wages during the first two quarters of 2010, she had engaged in substantial gainful activity ("SGA") since her alleged disability onset date. Tr. 26. Plaintiff then sought review by the Appeals Council, which denied Plaintiff's request on August 17, 2012. Tr. 1-3. Plaintiff sought district court review of the ALJ's decision by filing this complaint on October 19, 2012.

### B. Plaintiff's Physical Condition and Medical History

The Court will describe Plaintiff's medical history only to the extent that it is relevant to this appeal. Plaintiff's DIB claim is based upon medical impairments related to her diagnosis with CRPS and fibromyalgia. Tr. 180. She indicates that she developed CRPS as a result of a car accident that took place on June 30, 2007. Tr. 185, 639. At the hearing before the ALJ,

Plaintiff testified that her medical impairments cause "extreme muscle and joint pain and fatigue, it's hard for me to use my hands, lift my arms, I have neuropathy in my legs, so it's hard to walk, so I wear orthopedic shoes, it's hard to hold things, move things, sit, stand." Tr. 41. She described experiencing "shooting, burning terrible pain," in "every joint," and in her hands, arms, shoulders, and legs. Id. Her pain is constant, and she indicated that "even a good day is still a painful day." Id. Plaintiff reported that when she sleeps, her sheets hurt to the touch, and as a result, she sleeps for at most four hours at a time, and wakes up frequently due to the pain. Tr. 45-46. Plaintiff takes a number of prescribed medications as a result of her pain, such as Lyrica, Celebrex, Oxycodone, Xanax, and sleep medication. Tr. 43, 67-68.

Plaintiff indicates that she can no longer engage in many activities as a result of her prior car accident and resulting CRPS. Such activities include caring for her pets, engaging in recreational sports such as running or jogging, and skiing. Tr. 43-45. Regarding her personal care, Plaintiff testified that she has difficulty dressing herself and bathing, and often her husband must assist her when she dresses. Tr. 47-48.

Plaintiff also indicated that she has only limited ability to participate in household chores. Tr. 50. Her husband prepares approximately 90 percent of their meals because of her difficulty in accomplishing simple kitchen tasks. Tr. 48, 49. Plaintiff cannot do any yard work, but she sometimes sweeps the porch "just to get outside." Tr. 50. She testified that she can no longer use a standard vacuum cleaner, but she is able to lift a lightweight one. Id. For laundry, Plaintiff relies on her husband to carry clothes to and from the basement, although she can sometimes operate the washing machine and dryer. Tr. 50-51. Plaintiff also has difficulty lifting heavy

bags, but she sometimes does "light grocery shopping." Tr. 51. Plaintiff also indicated that her medication leaves her in a forgetful and confused mental state at times. Tr. 55-56.

### C. Plaintiff's Work History

From October 2008 to the time of the hearing before the ALJ, Plaintiff worked as an administrative assistant for a non-profit organization called "Children Can Shape the Future," which she describes as an organization that gives grant money to children in Philadelphia and Camden. Tr. 57, 65. A friend of Plaintiff is the executive director of the organization. Tr. 65. Plaintiff and the executive director, who also works from his respective place of residence, were the only employees of the organization at the time of her testimony, although there is a board of directors. Id. The organization has no physical offices. Tr. 58. Plaintiff testified that the administrative assistant job was not created for her. Tr. 66. She indicated that after disclosing her medical condition, the executive director of the organization believed that it might be mutually beneficial for the two of them if Plaintiff filled the position. Tr. 66-67.

Among her duties, Plaintiff answers phone calls and e-mails, and processes grant applications for her employer. Tr. 58. She testified that "luckily my employer's very flexible with how I feel so I can take my time to answer an email and get back to somebody, so if I'm not feeling really good I know that I . . . can do it at a later time." Id. She works approximately thirteen hours per week, between 9:00 A.M. and 5:00 P.M., Monday through Friday. Tr. 63-64. When the ALJ questioned Plaintiff about whether she is required to be continuously available for all 40 hours during the week, she responded "No, you're correct . . . I'm not required to be on call for that amount of time . . . I'm just supposed to work 13 hours a week during that time period." Tr. 63. Plaintiff indicates that because it is difficult for her to sit for long periods of

4

time, she usually works for no longer than one hour at a time. Tr. 66. She receives a biweekly net salary after taxes of $484.00. Tr. 58.

Regarding her work, Plaintiff testified that "[e]very day is different and every day is based on how I feel." Tr. 64. Plaintiff testified that some days because of the pain, she can "maybe type out an email, take a minute to come back to it and just make sure I'm saying something right, or I didn't miss spell some things, didn't miss a word." Tr. 73. She generally lets phone calls go to voicemail before she calls them back because she make notes before calling people back. Tr. 74.

Prior to working for the non-profit organization, Plaintiff worked as a licensed real estate agent from 2003 or 2004 through January 1, 2010. Tr. 75-76. She worked on commission as a real estate agent and reported her earnings as self-employment earnings. Tr. 76. Plaintiff indicated that there was "no major medical change" that caused her to stop working as a real estate agent on January 1, 2010, but that she had to leave her real estate work because it was too physically taxing for her to continue. Tr. 79. She described her real estate work as "very physical," and indicated that it required a lot of driving, opening and locking up doors, meeting people, and walking around. Id. Plaintiff also worked in the past as a self-employed freelance audio technician, which related to the broadcasting of New Jersey Lottery drawings. Tr. 77. That job ended in approximately May 2009, when the work was no longer available because of a change in the way the Lottery broadcasts its drawings. Tr. 78. Plaintiff also worked as a receptionist for several years prior to working as a real estate agent, and for several years as a retail sales clerk prior to that. Tr. 82-83.

**D. Testimony of the Vocational Expert**

5

A vocational expert, James Earhart, also testified at the hearing before the ALJ. The ALJ proposed to the vocational expert the following hypothetical, meant to capture the work capability of an individual with the same characteristics as Plaintiff: "Mr. Earhart, assume that the hypothetical individual . . . requires a 10-minute break each hour of an eight hour workday, would that person be able to perform the occupation of receptionist?" Tr. 87. The vocational expert answered that the person would not. Id. He also indicated that a person with those limitations was not capable of performing any work relevant to Plaintiff's past occupations. Id. He indicated that while "you might be able to find an employer to accommodate that," the economy in general would not be able to support a job with those restrictions in any of Plaintiff's prior work areas. Tr. 88. The vocational expert also indicated that "if someone misses more than two days a month for reasons other than excused, scheduled absences, that would jeopardize their ability to do any work." Id.

**E.  Plaintiff's Earnings and Expenses**

In reaching his decision, the ALJ looked at Plaintiff's New Hire, Quarter Wage Unemployment Query, which indicated that she earned $3325.00 in both the first and second quarters of 2010. Tr. 26 (citing Tr. 166-171). The ALJ found that this averaged $1108.00 per month. Id. Since the SGA level for 2010 was $1000.00 per month, he found that Plaintiff's earnings exceed that level by $108.00 per month. Id.

During the hearing, the ALJ questioned Plaintiff about her medical insurance situation, to which she responded that she was covered by her husband's medical insurance plan. Tr. 80. The ALJ then asked her "Have you had significant medical expenditures despite having that insurance?" Id. Plaintiff responded "No. Significant in like - - as in tens of thousands?" Id.

The ALJ then explained how impairment related work expenses could offset earnings in determining whether her work would be considered SGA. Id.

Plaintiff's attorney then asked the ALJ whether he should obtain EOBs (Explanation of Benefits forms) and prescription records. Id. The ALJ indicated that he couldn't "make a snap judgment even as to whether that's necessary at this stage, but [Plaintiff's expenses] might be something we need to look at. . . . [D]on't throw any of them away . . . I'm not at that stage yet where I'm clear that I want them." Tr. 80-81. At the end of the hearing, the ALJ stated that he would review the case, and he would let Plaintiff's attorney know "whether I need that information, and if so exactly what I need." Tr. 89.

## II. STANDARD FOR REVIEW OF COMMISSIONER'S DECISION

District court review of the Commissioner's final decision is limited to ascertaining whether the decision is supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Morales v. Apfel, 225 F.3d 310, 316 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)). If the Commissioner's determination is supported by substantial evidence, the Court may not set aside the decision, even if the Court "would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (citing Hartranft, 181 F.3d at 360). A district court may not weigh the evidence "or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).

Nevertheless, the reviewing court must be wary of treating a search for substantial evidence as "merely a quantitative exercise" or as "a talismanic or self-executing formula for adjudication." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."). The Court must set aside the Commissioner's decision if the Commissioner did not take into account the entire record or failed to resolve an evidentiary conflict. Schonewolf v. Callahan, 972 F. Supp. 277, 284-85 (D.N.J. 1997) ("Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.") (quoting Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978)). Furthermore, evidence is not substantial if it "really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (citing Kent, 710 F.2d at 114).

While an ALJ need not cite all evidence a claimant presents in reaching a decision, the ALJ may not reject pertinent, relevant, or probative evidence without explanation. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008). An ALJ may reject evidence without explanation when "[o]verwhelming evidence in the record discount[s] its probative value, rendering it irrelevant." Id. However, the ALJ "must 'explicitly' weigh all relevant, probative and available evidence." Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994).

### III. DISCUSSION

In order to qualify for DIB, a claimant must establish that she "is under a disability." 42 U.S.C. § 423(a)(1)(E). A non-blind claimant is under a disability if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairment(s) must prevent him not only from doing his previous work, but also from "engag[ing] in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). The five steps are considered in sequence, and if a decision is made at any step, the sequence stops. 20. C.F.R. § 404.1520. The steps are as follows:

> 1) If the claimant engages in substantial gainful activity, the claim for disability benefits will be denied. 20 C.F.R. § 404.1520(b).
> 2) If the claimant does not have a severe impairment which limits his or her physical or mental ability to perform standard work activities, the claim will be denied. 20 C.F.R. § 404.1520(c).
> 3) If the claimant's severe impairment(s) meets or equals the severity of any impairment listed in an appendix found in the regulations, the claimant is disabled. 20 C.F.R. § 404.1520(d).
> 4) If the claimant's impairment(s) does not leave him or her with the "residual functional capacity" to perform his or her past relevant work, the claim will be denied. 20 C.F.R. § 404.1520(f).
> 5) If the claimant does not retain the residual functional capacity to perform past work, and the claimant cannot make an adjustment to other work, based upon factors such as the claimant's age, education and work experience, then the claimant will be found to be disabled. 20 C.F.R. § 404.1520(g).

With respect to the first step, SGA, the regulations further explain that "if you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience." Id. § 404.1520(b).

In his decision, the ALJ found at the first step of the five-step inquiry that "[t]he claimant has engaged in substantial gainful activity since January 2010" under 20 CFR §§ 404.1520(b) and 404.1571. Tr. 26. The ALJ based his conclusion on three findings. First, the ALJ pointed to Plaintiff's New Hire, Quarter Wage Unemployment Query, which indicated that Plaintiff earned $3325.00 for each of the first and second quarters of 2010. Tr. 26 (citing Tr. 166-171). The ALJ found that this averaged out to $1108.00 per month, which exceeded the SGA level for 2010 by $108.00 per month. Id. Second, "[t]he claimant did not testify that any special considerations were given." Tr. 27. Third, "[s]he indicated that she was under her husband's health insurance and that he works for the State of New Jersey, so that she has few if any potential impairment-related work expenses in the form of medical/pharmacy expenses." Id. Because of his findings at the first step, the ALJ did not move on to discuss the other four steps. Id.

Plaintiff argues that the ALJ erred for two reasons. First, the ALJ failed to consider whether her work was done under special conditions as defined in 20 C.F.R. § 404.1573(c). Pl. Br. at 12. Second, Plaintiff claims that the ALJ failed to develop the record regarding whether any impairment-related work expense deductions could have placed her earnings below the SGA level for 2010. Pl. Br. at 18. The Commissioner argues that special conditions did not exist

10

because Plaintiff's hours were not irregular for her particular job, there are no other employees to compare Plaintiff's productivity with, and Plaintiff did not obtain her job because of a past association with her employer or her employer's concern for her welfare. Def. Br. at 9-12. With respect to the impairment-related work expenses, the Commissioner argues that it is Plaintiff's burden to furnish evidence of these expenses, if they exist, and Plaintiff has not demonstrated the existence of such expenses in her initial application, before the ALJ, or in this litigation. Id. at 13.

Considering first Plaintiff's argument that her work was done under special conditions, she submits that had the ALJ considered this issue, he would have found that such special conditions existed because she (1) worked irregular hours and took frequent rest periods, (2) was permitted to work at a lower standard of productivity or efficiency than regular employees would be, and (3) the position was made available by her friend who hired her despite her impairments because of their friendship. Pl. Br. at 15; Pl. Reply at 3. Plaintiff also argues that the ALJ failed to explicitly consider any of the evidence relevant to whether she worked under special conditions in his opinion. Id. at 14 (indicating that "there was no mention or assessment of that testimony whatsoever by the ALJ.")

Under the regulations, work may constitute SGA "even if it is done on a part-time basis." 20 C.F.R. § 404.1572(a). Earnings are generally the primary factor in determining whether a claimant is engaged in SGA. 20 C.F.R. § 404.1574(a)(1). The ALJ must first look to the claimant's monthly income to determine whether it has exceeded the level of substantial gainful

employment.[1] If a claimant's earnings exceed the amount set forth in the regulations, a presumption arises that the claimant engaged in SGA. 20 C.F.R. § 404.1574(b)(2); Keyes v. Sullivan, 894 F.2d 1053, 1056 (9th Cir. 1990). That presumption, however, may be rebutted. One of the ways to rebut the presumption is for the claimant to show that the work was performed under special conditions. Beeks v. Comm'r of Soc. Sec., 363 F. App'x 895, 897 (3d Cir. 2010). The regulations provide that "[i]f your work is done under special conditions, [the Commissioner] may find that it does not show that you have the ability to do substantial gainful activity," although "work done under special conditions may show that you have the necessary skills and ability to work at the substantial gainful activity level." 20 C.F.R. § 404.1573(c). The regulations further indicate what the Commissioner should weigh in determining whether a claimant worked under special conditions:

> Examples of the special conditions that may relate to your impairment include, but are not limited to, situations in which--
>
> > (1) You required and received special assistance from other employees in performing your work;
> >
> > (2) You were allowed to work irregular hours or take frequent rest periods;
> >
> > (3) You were provided with special equipment or were assigned work especially suited to your impairment;
> >
> > (4) You were able to work only because of specially arranged circumstances, for example, other persons helped you prepare for or get to and from your work;
> >
> > (5) You were permitted to work at a lower standard of productivity or efficiency than other employees; or

---

[1] The regulations provide a formula for determining the amount of earnings which, if exceeded, constitute SGA. See 20 C.F.R. § 404.1574(b)(2). The parties here do not dispute that the amount applicable to Plaintiff is $1,000.00 per month.

> (6) You were given the opportunity to work despite your impairment because of family relationship, past association with your employer, or your employer's concern for your welfare.

Id.

In analyzing a claimant's application, the Commissioner is required to consider all evidence in the record. See 42 U.S.C. 423(d)(5)(b); Adorno, 40 F.3d at 48; Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 126 (3d Cir. 2000). An "ALJ's failure to address evidence in direct conflict with his/her findings or to reject uncontradicted evidence without a clear statement of the reasoning is erroneous." Landeta v. Comm'r of Soc. Sec., 191 F. App'x 105, 110 (3d Cir. 2006).

Here, the ALJ's decision relies heavily on the amount per month that Plaintiff earned in determining that Plaintiff engaged in SGA. However, the ALJ did not address any of Plaintiff's testimony regarding the accommodations provided to Plaintiff in her employment. The ALJ's commentary on special conditions is limited to his observation that "[t]he claimant did not testify that any special considerations were given." Tr. 27.

Although the Commissioner now advances a number of arguments as to why Plaintiff's employment was not under special conditions, the ALJ did not address the evidence relevant to special conditions at all. While it admittedly might be difficult to determine whether Plaintiff works under special conditions because she was the only employee other than the executive director at the time of her testimony, this does not excuse the need for the ALJ to make findings.

In particular, the ALJ did not address whether Plaintiff's employment constituted "irregular work hours or . . . frequent rest periods." 20 C.F.R. § 404.1573(c). Plaintiff's testimony was that she works thirteen hours per week and that the longest she works without taking a break is one hour. Tr. 63, 66. Plaintiff indicated that she does not work the same hours

13

every day or every week, but that "every day is different and every day is just based on how I feel." Tr. 64. She also stated that she can take breaks whenever she needs to. Tr. 66. While it is possible, as the Commissioner now argues, that Plaintiff's schedule is a result of the nature of her job, and not special accommodations made for her, Plaintiff's testimony was relevant and probative as to whether her job involves irregular work hours or frequent rest periods. Although this Court may not weigh the evidence, the ALJ must explicitly weigh such evidence.

Furthermore, the ALJ did not comprehensively address the manner in which Plaintiff obtained her job. If she was given the job "despite [her] impairment because of family relationship, past association with [her] employer, or [her] employer's concern for [her] welfare," then special conditions would exist. Here, Plaintiff and the executive director are friends. Tr. 65. While Plaintiff testified that the job was not created for her, and that the executive director thought "it might be mutually beneficial for me and to fill this position [sic]," the ALJ did not explain why he concluded that she did not obtain the job due to her employer's concern for her welfare. Tr. 66-67. The Commissioner argues that the job was not created for Plaintiff, and it was "mutually beneficial" for Plaintiff and her employer. The fact that Plaintiff's employment might be beneficial for both Plaintiff's employer in addition to her does not preclude the possibility that she was offered the job due to concern for her welfare or due to a past relationship with her employer. The controlling regulation does not require that the job must be offered as a case of charity, with no benefit flowing to the employer, nor does it require that the job be specifically created for a claimant. Although Plaintiff conceded that her employer interviewed other people for the position, this evidence does not obviously preclude a finding

14

that she obtained her job due to "past association with" her employer, or due to his concern for her welfare.

An ALJ is free to reject a claimant's testimony as implausible, or to find that special conditions do not exist after applying the evidence to the regulations. See Burnett, 220 F.3d at 122. It is possible that the ALJ believed that thirteen hours per week, while perhaps considered "irregular" in comparison with many traditional jobs, was merely the amount of work that Plaintiff's job calls for. He may have also felt the same about Plaintiff's ability to take breaks, and he may have concluded that Plaintiff did not obtain her job because of past association with her employer or her employer's concern about her well-being. However, because the ALJ made no findings with respect to any of Plaintiff's relevant testimony about the circumstances under which she works, the Court cannot uphold the ALJ's decision. See SEC v. Chenery Corp., 318 U.S. 80, 87 (1943) (indicating that an administrative order must be judged based upon the reasons indicated in the administrative record). Even if the Court agrees with the explanations provided by the Commissioner now on appeal, because this Court may not weigh the evidence, the Court may not uphold the decision where no such analysis was provided by the ALJ. Fargnoli, 247 F.3d at 42 (3d Cir. 2001). When an ALJ states "a summary conclusion" without "discussing the evidence, or explaining his reasoning," the decision should be set aside. Burnett, 220 F.3d at 119 (citing Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996)). The Court finds no "overwhelming evidence" that would render Plaintiff's testimony about the conditions of her work irrelevant, thus excusing the need for the ALJ to discuss this evidence. Johnson, 529 F.3d at 204.

After reviewing the record, the Court thus finds that the ALJ erred in denying Plaintiff's claim at Step One of the five-step review process. The ALJ failed to explain why Plaintiff's conditions of employment did not constitute special conditions, despite seemingly rejecting evidence in conflict with his findings. See Landeta, 191 F. App'x at 110. Therefore, the Court cannot conclude that the ALJ's findings are supported by substantial evidence, and the case will be remanded for further consideration. For this reason, it is not necessary to determine whether the ALJ erred in failing to consider Impairment Related Work Expenses.

## III. CONCLUSION

For the foregoing reasons, the Court will vacate the Commissioner's final decision and remand the matter for further proceedings consistent with this Opinion. An appropriate order shall enter today.

Date: 12/18/2013  /s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge